IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

MAR - 5 2007

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

TRUSTWORTHY MORTGAGE   *
CORPORATION,   *
  *
    Plaintiff,   *
  *   Civil Action No. 8:06-CV-02402-AW
   v.   *
  *
STEPHEN HARVEY HOFFMAN, et al,   *
  *
  *
  *
    Defendants.   *
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM OPINION

Trustworthy Mortgage Corporation ("Plaintiff" or "TMC") brings this action against Stephen

Hoffman and others for, *inter alia*, misappropriation/conversion and combination to injure business.

Currently pending before the Court is Defendants' Motion to Dismiss Counts 6 and 10 of Plaintiff's

Complaint (Paper No. 11). The Court has reviewed the pleadings and applicable law and has

determined that a hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons

stated below, the Court will deny Defendants' Motion to Dismiss.

### FACTUAL BACKGROUND

The following facts are taken in the light most favorable to Plaintiff. Lin Chien ("Chien")

is the sole shareholder, President, and CEO of TMC. In March 2003, TMC opened its Maryland

office and Chien named Steve Hoffman as its General Manager. Steve Hoffman and his wife, Yun

Hoffman (collectively, the "Hoffmans"), took complete control of TMC's business, including control

1

of TMC's website(s), control over bank accounts for the Maryland office (which were distinct from the bank accounts of TMC's Virginia office), the authority to sign checks, and the authority to maintain financial books and records of the operations.

In February 2006, Chien discovered that the Hoffmans had misappropriated tens of thousands of dollars from TMC since 2005. Chien discovered that the Hoffmans' control over the Maryland office allowed them to directly deposit the misappropriated funds without being detected. After discovering this, Chien demanded that the Hoffmans return the misappropriated funds, but they refused and threatened to destroy TMC's business if Chien fired or sued them. Chien also sought to have a third party take over the finances of the operations, but the Hoffmans again refused to allow that and threatened to ruin TMC's business.

While employed by TMC, Steve Hoffman, with the help of Defendant Larry McPherson ("McPherson"), diverted the loyalty of TMC's employees to Steve Hoffman. Steve Hoffman used his employment status at TMC to influence crucial managers and employees of TMC to threaten Chien if she took action against him. While still employed by TMC, Steve Hoffman, in concert with McPherson and Yun Hoffman, began competing against TMC with their entity, Defendant TMC Loans. At this time, Steve Hoffman and McPherson recruited TMC employees to work for Defendant TMC Loans. The Hoffmans and McPherson used TMC's employees, website(s), trademarks, equipment, relationships, servers, computer software, and resources to build Defendant TMC Loans into a viable competitor of TMC. Steve Hoffman also used his senior manager status to negotiate business to third party entities to disadvantage TMC and benefit himself. When Steve Hoffman learned that Chien intended to visit TMC's Florida office, he instructed TMC employees to remove all evidence of Defendant TMC Loans' activities.

2

As a result of Defendants' alleged conduct, TMC filed an eleven count complaint, including claims for misappropriation/conversion against the Hoffmans (Count 6) and a claim for combination to injure business against the Hoffmans, McPherson, and TMC Loans (Count 10). Defendants filed the instant motion to dismiss Counts VI and X pursuant to Rule 12(b)(6).

## STANDARD OF REVIEW

### A.    Choice of Law

A federal court sitting in diversity applies the substantive law of the state in which it sits, including the state's choice of law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *see also United Mine Workers v. Gibbs*, 383 US. 715 (1966) (finding that a federal court exercising supplemental jurisdiction must apply state law to state claims); *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002) (finding that in a diversity action, state law of the forum court governs the substantive issues, and federal law governs the procedural issues); *Federal Ins. Co. v. Smith*, 63 Fed. Appx. 630 (4th Cir. 2003) (unpublished) (finding that cases in federal court on diversity grounds require adherence to the choice of law rules of the forum state). Maryland adheres to the *lex loci delicti* rule in analyzing choice of law issues with respect to all tort causes of action. *See Philip Morris, Inc. v. Angeletti*, 752 A.2d 220, 230 (Md. 2000) (citing *Hauch v. Connor*, 453 A.2d 1207, 1209-15 (Md. 1983); *White v. King*, 223 A.2d 763, 765-66 (Md. 1966); *see also Farwell v. Un*, 902 F.2d 282, 286 (4th Cir. 1990) (observing that "Maryland, against what may be the general trend of latter times toward 'significant relationships' analysis, appears rather steadfastly to have adhered to *lex loci* as the ordering principle in tort cases").[1]

---

[1] Maryland favors the *lex loci delicti* principles espoused in §§ 378-390 of the Restatement (First) of Conflict of Laws over the "significant contacts" test enunciated in §§ 6,

3

Under the *lex loci* approach, where the events giving rise to a tort action occur in more than one State, Maryland applies the law of the State where the injury–the last event required to constitute the tort–occurred. *See Philip Morris*, 752 A.2d at 230-32; *Hauch*, 453 at 1209-15; *White*, 223 A.2d at 765-66; *Sherrod v. Achir*, 817 A.2d 951 (Md. Ct. Spec. App. 2003) (finding that Maryland choice of law rules provide that when analyzing tort actions, the substantive tort law of the place where the wrong occurred controls); *see also* RESTATEMENT (FIRST) OF CONFLICT OF LAWS § 377 (stating that the "place of wrong is the state where the last event necessary to make an actor liable for an alleged tort takes place"); HERBERT F. GOODRICH, HANDBOOK OF CONFLICT OF LAWS § 93, at 263-64 (West Publ'g. Co. ed., 1949) ("The tort is complete only when the harm takes place, for this is the last event necessary to make the actor liable for the tort.").

### B.     Rule 12(b)(6)

A court must deny a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), this Court must view the well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true. *See Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997) (*citing Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 217-18 (4th Cir. 1994)); *Chisolm v. TranSouth Finan. Corp.*, 95 F.3d 331, 334 (4th Cir. 1996).

The Court, however, is "not bound to accept as true a legal conclusion couched as a factual

---

145, and 146 of the Restatement (Second) of Conflict of Laws.

allegation." *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)); *Young v. City of Mount Ranier*, 238 F.3d 576, 577 (4th Cir. 2001) (the mere "presence ... of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)"). Nor is the Court "bound to accept [Plaintiff's] conclusory allegations regarding the legal effect of the facts alleged." *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Therefore, a complaint may be dismissed as a matter of law only if it lacks a cognizable legal theory *or* if it alleges insufficient facts to support a cognizable legal theory. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) (citing 2A J. Moore, Moore's Federal Practice ¶ 12.08 at 2271 (2d ed. 1982)).

## DISCUSSION

### A.    Multiple Jurisdictions and Conflicts of Laws

Little debate surrounds the place of the wrong when both the tortfeasor's actions and the plaintiff's injuries occur in the same state. However, when the actions and the injury occur in two separate jurisdictions, Maryland is less clear about the place of the wrong. Maryland courts have not specifically ruled on the issue of where the "'wrong' occurs in cases of pecuniary injury resulting from fraud, negligent misrepresentation or commercial negligence, when the alleged wrongful act or omission occurred in one jurisdiction and the 'loss' by plaintiff in another jurisdiction." *Semtek Intern. Inc. v. Lockheed Martin Corp.*, 2003 WL 24422901, *2 (Md. Cir. Ct. 2003) (unpublished) (citing *Cremi v. Brown*, 955 F. Supp. 499, 522 (D. Md. 1997), *aff'd* 132 F.3d 1017 (4th Cir. 1997). Where Maryland courts are silent or non-specific about a rule, this Court should apply the rule which it reasonably believes would be adopted by the Court of Appeals of Maryland regarding the issue.

5

*See Cremi*, 955 F. Supp. at 523 (citing *Upgren v. Exec. Aviation Serv., Inc.*, 326 F. Supp. 709, 711 (D. Md. 1971). While it is clear that the Maryland Court of Appeals would adhere to *lex loci delecti* with regard to both counts at issue here, it is unclear whether the place of the wrong is the place that the tortfeasor acts or the jurisdiction where the loss or injury was felt. *See Hardwire LLC v. Goodyear Tire & Rubber Co.*, 360 F. Supp. 2d 728, 733 (D. Md. 2005) (noting that "Maryland courts have not addressed the issue of where the 'wrong' occurs in cases of fraud, or negligent misrepresentation, when the alleged wrongful act and the alleged loss occur in separate jurisdictions" and finding that as a result of this uncertainty, the question of which jurisdiction prevails should be left for the Court of Appeals of Maryland).

Only nine states join Maryland in adhering to the rule of *lex loci delicti* in tort actions.[2] AMERICAN LAW OF PRODUCTS LIABILITY § 46:20 (3d ed. 2007). Maryland courts are clear in situations where personal injury results from the tortfeasor's negligence. In those cases, Maryland considers the place of the wrong to be the place where the injury occurred. *See, e.g., Philip Morris, Inc. v. Aneletti*, 752 A.2d 220 (Md. 2000). Outside the personal injury context, however, the Maryland's position regarding the place of the wrong in a tort action is less clear.

### i.      Place of the Injury Governs

Many Maryland state and federal courts have adopted the "place of the injury" school of thought when determining the place of wrong in cases other than those involving personal injury. *See, e.g., In re Sabin Oral Polio Vaccine Products Liab. Litig.*, 774 F. Supp. 952, 954 (D. Md. 1991); *Uppgren v. Executive Aviation Services, Inc.*, 326 F. Supp. 709, 711 (D. Md.1971); *Frericks*

---

[2] Alabama, Delaware, Georgia, Kansas, Maryland, Massachusetts, North Carolina, South Carolina, Virginia, and Connecticut.

6

*v. General Motors Corp.*, 336 A.2d 118, 123 (Md. 1975); *Black v. Leatherwood Motor Coach Corp.*, 606 A.2d 295, 299-300 (Md. Ct. Spec. App. 1992). In *Hauch v. Connor*, 453 A.2d 1207, 1209-10 (Md. 1983), the court explained that in an injury resulting from an automobile accident, the foreign state's resources are extended when the collision occurs within its borders and the collision poses a direct threat to the people and property within the state. Consequently, "the citizens of the foreign state should be the ones to determine, through their tort law, whether particular conduct is tortious and the extent of the monetary sanction." *Id.* at 125.

Following this theory, a Maryland Circuit court reasoned that the Court of Appeals of Maryland decision in *Philip Morris* and other federal cases point to the conclusion that the place of injury should govern. *Semtek Intern. Inc. v. Lockheed Martin Corp.*, 2003 WL 24422901 (Md. Cir. Ct. Feb. 11, 2003) (unreported). The Fourth Circuit has applied the "place of the injury" theory to a breach of contract claim. *Johnson v. Orowheat Foods Co.*, 785 F.2d 503, 511 (4th Cir. 1986) (finding that the place of the injury from an alleged breach of contract claim was the place of the wrong for choice of law purposes).

Additionally, the "place of the injury" theory is generally followed by other *lex loci* states when multi-state misrepresentational torts are concerned. In situations involving fraud and misrepresentation, other *lex loci delicti* states generally consider the place of the wrong to be the place of the injury and not where the alleged misrepresentations were made. *See Cremi v. Brown*, 955 F. Supp. 499, 523 (D. Md. 1997) (citing *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956), *cert. denied*, 352 U.S. 871 (1956) (stating that "the place of the wrong is not where the fraudulent statement was made, but where the plaintiff, as a result thereof, suffered a loss")); *Hester v. New Amsterdam Cas. Co.*, 287 F. Supp. 957, 972 (D.S.C. 1968) ("In the case of fraudulent

misrepresentation the law of the place of the wrong . . . is not where the misrepresentations were made but where the plaintiff as a result of the misrepresentation suffered a loss.") *aff'd in part*, 412 F.2d 505 (4th Cir. 1969).

### ii.    Place of the Action Governs

Several Maryland District Court cases have applied  the "place of the action" school of thought when determining the place of the wrong in cases other than those involving personal injury. The courts have found the wrong occurs in the place where the tortfeasor acts. For example, in *Sacra v. Sacra*, 426 A.2d 7 (Md. Ct. Spec. App. 1981), the Court of Special Appeals of Maryland found that Delaware law should apply where an automobile collision occurred in Delaware even though a vehicle was propelled over the state line into Maryland. The court found that Delaware law should govern since the intervention of the state line between the collision and the death was merely a fortuitous situation. *Id.* This theory is more like the "significant relationship" test based on the approach set forth in the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148 (1971) and adopted to replace *lex loci delicti* in most states. The "significant relationship" test is based on the idea that "the place of the occurrence of an unintentional tort is fortuitous, and it is by mere happenstance that the *lex loci* state is concerned at all." *White v. King*, 223 A.2d 763, 766 (Md. 1966) (citing *Wilcox v. Wilcox*, 133 N.W.2d 408, 414 (Wis. 1965). For example, in *Cremi v. Brown*, this Court determined that the Court of Appeals of Maryland would use common sense with regard to cases involving fraud or negligent misrepresentation where the conduct occurs in one jurisdiction and the injury in another. 955 F. Supp. 499, 524 (D. Md. 1997), *aff'd* 132 F.3d 1017 (4th Cir. 1997). The Court found that the place of the wrong was the place where the alleged misrepresentations or other wrongful acts took place and not the jurisdiction where the loss was felt. *Id*.

### B.    Conflict of Laws Regarding Count X: Combination to Injure Business

Although Maryland courts have not spoken directly to this issue when determining "the place

of the wrong," they are most likely to adopt the "place of the injury" theory. The intention of the Maryland Court of Appeals to strictly follow the *lex loci delicti* doctrine makes it necessary to interpret the place of the injury in its strictest sense. *See, e.g., Lowe's North Wilkesboro Hardware, Inc. v. Fidelity Mut.*, 319 F.2d 469, 475, n. 6 (4thCir. 1963)(discussing the evolution of conflicts law of torts and describing *lex loci delicti* as "localized at the place of the harm rather than at that of the conduct." (citing Albert Ehrenzweig, *A Treatise on the Conflict of Laws* 596 (West Publ'g Co. 1962)(1959))). When considered in totality, the RESTATEMENT (SECOND) OF CONFLICT OF LAWS adheres to the principle that the place of the injury is the place of the wrong. Alternatively, the "place of the action" school of thought is more analogous to the "significant relationships" test which Maryland courts have strictly declined to follow. *See White v. King*, 244 Md. 348, 354 (1966) (discussing the fact that adopting the RESTATEMENT (SECOND) CONFLICT OF LAWS § 379 is a decision for the Legislature and that the Court of Appeals of Maryland will continue to follow the *lex loci delicti* doctrine until the Legislature adopts a new rule). Finally, since Count 10 alleges Defendants' intentional injury of Plaintiff's business, the place of the injury is no longer fortuitous as in situations involving unintentional torts. With intentional torts, the tortfeasor knows in which jurisdictions the plaintiff will be injured. In this case, Defendants knew that their acts would injure Plaintiff in Virginia at its headquarters.[3]

Since Maryland courts strictly adhere to the *lex loci delicti* doctrine for all torts and neglects to follow the "significant relationships" test, the place of the injury should govern in the instant case. The injury to Plaintiff occurred in Virginia where Plaintiff is headquartered. Accordingly, the Virginia law regarding the tort alleged in Count 10 should apply. In Virginia, to plead a cause of action for conspiracy under §§ 18.2-499 and 18.2-500, the Plaintiff must show that: (1) two or more

---

[3] Regardless of whether Defendants acted in Maryland or Florida, they knew their acts would injure Plaintiff at its headquarters in Virginia.

persons combine, associate, agree, or mutually undertake together, to (2) willfully and maliciously injure another in his reputation, trade, business, or profession. *See* VA. CODE ANN. §§ 18.2-499-500 (1950); *Michigan Mut. Ins. Co. v. Smoot*, 128 F. Supp. 2d 917, 924-25 (E. D. VA 2000). Based on the allegations in Plaintiff's complaint, the Court believes that TMC has adequately set forth sufficient allegations to meet the pleading criteria for its conspiracy claim. *E.g.*, Am. Compl. ¶ 128.

### C.   Conflict of Laws Regarding Count VI: Misappropriation/Conversion

The *lex loci delicti* rule also applies to conversion causes of action in Maryland. *See Ives v. Advanced Broadband Solutions, Inc.*, 2004 WL 180043 (D. Md. Jan. 23, 2004) (Chasanow, J.); *Philip Morris*, 752 A.2d 220, 231 (Md. 2000). In *First Union Nat. Bank v. New York Life Ins. and Annuity Corp.*, 152 F. Supp. 2d 850, 854 (D. Md. 2001), this Court addressed the place of the wrong in conversion cases and emphasized Maryland's adherence to the rule that the place of the injury is the place where the last act required to complete the tort occurs. The Court also noted that no Maryland court has defined the last act necessary to complete the tort of conversion, but after considering the arguments of both parties, the Court found that the delivery of a check was the last act necessary to complete the tort of conversion because it was the act that sealed the misappropriation. *First Union*, 152 F. Supp. 2d at 854.

Accordingly, the acts that sealed the misappropriation in the instant case occurred when the Hoffmans allegedly received the misappropriated funds. Thus, Maryland law governing conversion requires that this Court use the law of the state in which the Defendants received the misappropriated funds. Since Steve Hoffman managed both a Maryland and Florida branch of TMC during his employment, and presumably during the alleged misappropriation, the use of Maryland or Florida law is dependent upon where his bank account was located.

If Defendants received and took dominion over the misappropriated funds in Maryland,

Maryland's laws governing conversion apply.[4] Maryland recognizes conversion as an intentional

tort, consisting of two elements: 1) a physical act combined with 2) a certain state of mind. *See*

*Darcars Motors of Silver Springs, Inc. v. Borzym*, 841 A.2d 828, 835 (Md. 2003). The physical act

encompasses "any distinct act of ownership or dominion exerted by one person over the personal

property of another in denial of his right or inconsistent with it." *Id.* (citing *Allied Investment Corp.*

*v. Jasen*, 731 A.2d 957, 963 (Md. 1999)). This physical act can "occur either by initially acquiring

the property or by retaining it longer than the rightful possessor permits." *Id.* The intent component

of conversion, at a minimum, requires that a defendant have "'an intent to exercise a dominion or

control over the goods which is in fact inconsistent with the plaintiff's rights.'" *Id.* at 836 (quoting

*Keys v. Chrysler Credit Corp.*, 494 A.2d 200, 208 (Md. 1985)). While Maryland historically refused

to recognize conversion claims regarding intangible property, the Court of Appeals of Maryland has

extended conversion to the type of intangible property rights that are "merged or incorporated into

a transferable document." *Allied Inv. Corp.*, 731 A.2d at 964 (Md. 1999).

Plaintiff alleges that the Hoffmans, intentionally and without permission, misappropriated

tens of thousands of dollars from TMC, exercised dominion and control over those funds, and

refused to return them to TMC. *See* Amended Compl. ¶ 93. Defendants argue that Plaintiff fails to

state a claim upon which relief can be granted because TMC seeks relief for the conversion of an

unspecified sum of money. A liberal reading of Plaintiff's complaint indicates that the alleged

---

[4] In paragraphs 18-23 of Plaintiff's amended complaint, Plaintiff alleges that Defendants
misappropriated funds during their employment at Plaintiff's Maryland office. Although both
Plaintiff and Defendant address Florida conversion law in their motions regarding dismissal,
neither party claims that Florida law should apply. Contacts with Florida are alleged in
Plaintiff's amended complaint at paragraph 50, but Plaintiff makes no claim of conversion or
misappropriation of funds resulting from those contacts. Therefore, the Court will apply
Maryland conversion law to Plaintiff's conversion claim.

converted funds were in the forms of accounts receivable and other documented payments. This type of documentation satisfies Maryland's requirement that the intangible property be merged into a transferable document. *See Medi-Cen Corp. of Maryland v. Birschbach*, 720 A.2d 966, 972 (Md. Ct. Spec. App. 1998) (finding that accounts receivable that are represented by hard copies or electronic data would likely fulfill the requirement that intangible property be merged into a tangible document). The Court believes that, under the liberal notice pleading standards of Rule 8(a), Plaintiff has sufficiently put Defendants on notice that TMC has a conversion claim against Defendants. Am. Compl. ¶¶ 18-23. As a result, Defendants' motion to dismiss Count 6 will be denied.

**CONCLUSION**

For the reasons stated above, the Court will deny Defendants' Motion to Dismiss. An Order consistent with this opinion will follow.

March 5, 2007
Date

Alexander Williams, Jr.
United States District Judge